# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**DEREK A. C.,[1]**

    **Plaintiff,**

                              **Civil Action 3:22-cv-143**

    **v.**                             **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Derek A. C. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a Period of Disability and Disability Insurance Benefits ("DIB"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 10); the Commissioner's Memorandum in Opposition (ECF No. 11); Plaintiff's Reply (ECF No. 12); and the administrative record as supplemented (ECF Nos. 8, 9). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED,** and Plaintiff's Statement of Errors is **OVERRULED**.

## I.      BACKGROUND

Plaintiff protectively filed his DIB application in September 2020, alleging that he had been disabled since October 1, 2005. (R. 20, 162–63, 164–65.) After Plaintiff's application was

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

denied initially (R. 82, 83–87) and on reconsideration (R. 96, 99–95), a telephonic hearing was held on August 30, 2021, before an Administrative Law Judge ("ALJ"). (R. 38–81.) Plaintiff appeared *pro se* and testified. A vocational expert ("VE") also appeared and testified. On December 29, 2021, the ALJ issued a non-disability determination. (R. 17–37.) On February 5, 2022, Plaintiff notified the Commissioner that he had obtained counsel. (R. 13–16.) And Plaintiff submitted additional documents on February 8, 2022. (ECF No. 9.) On April 4, 2022, however, the Appeal Council notified Plaintiff that it did not exhibit the additional documents because they would not have changed the outcome and denied Plaintiff's request for review, thus making the ALJ's December 29, 2021 determination final. (R. 1–7).

Plaintiff seeks judicial review of that final determination. He asserts that the ALJ committed reversible error when relying on the VE's testimony to find that he could perform his past relevant work because the VE mischaracterized his past work. (Pl.'s Statement of Errors 5–7, ECF No. 10.) The Commissioner contends that Plaintiff's arguments are waived and lack merit, and to the extent they are not, any error was harmless. (Def.'s Mem. in Opp'n, 5–14, ECF No. 11.)

## II.    THE RELEVANT HEARING TESTIMONY

As noted, Plaintiff appeared *pro se* at the August 30, 2021 hearing. But the ALJ told Plaintiff that he had a right to be represented by an attorney or a non-attorney; a representative could not receive a fee unless it was approved; there were restrictions on the fees a representative could charge; and some legal service organizations offered free representation to persons who qualified. (R. 41–41.) The ALJ also asked Plaintiff if he wanted to postpone the hearing so that he could seek representation. (R. 42.) Plaintiff declined. (*Id.*)

Plaintiff testified that he had been on active duty in the Air Force from 1979 until he was discharged on October 1, 2005, his alleged date of onset. (R. 52.) Plaintiff further testified that he held the following positions during his last 15 years of military service: Chief Analysis Evaluation Branch; Chief of Curriculum and Development; Command Enlisted Training Programs; and Chief of Education and Training. (R. 53–55.) The VE indicated, however, that he did not know the duties for those jobs and that he needed additional information about them. (R. 55.) The ALJ, therefore, asked Plaintiff to provide more details about his jobs in the military as demonstrated by the following exchange:

| | |
|---|---|
| VE: | Your Honor? |
| ALJ: | Yes? |
| VE: | I have no idea what any of those jobs mean, what he did. And sometimes it's very hard to translate military jobs into civilian type DOTs. So he's going to need to flush out each one of those jobs. |
| ALJ: | Okay. |
| VE: | I have no idea what they were. |
| ALJ: | So let's elaborate a little bit for our vocational expert, [Plaintiff.] . . . So when you were Chief of Analysis, what were you analyzing? |
| [Plaintiff:] | . . . . When I was the Chief of Analysis Branch, what I was responsible, it was - - basically it was an OSI Academy. And what we did, we trained federal agents in the Air Force. So they would get base certification like the FBI would. They would get the basic certification. |
| ALJ: | Okay. So all these courses were some sort of training programs, correct? |
| [Plaintiff:] | Right. Yes. So we would do available training, initial training to certify, get agents certify [*sic*] performance related. And it was basically a military schoolhouse, I would say. |
| ALJ: | Okay. And you were a teacher? And you were teaching? You were -- |

| | |
|---|---|
| [Plaintiff:] | Yeah. No, I wasn't a -- well, I did do a small amount of teaching. But primarily, I was the director and I ran the programs, evaluated instructors, make [*sic*] sure they were maintaining the qualifications, evaluated lesson plans. I'd go sit through the classes and show they're providing appropriate training. And if they're not, then we'd do modifications to it. |
| ALJ: | Okay. Okay. [VE], does that help? I would say it's all going to be under one classification. |
| VE: | Okay. Yes . . . . |

(R. 55–56.) Plaintiff additionally testified in response to the VE's questions that his duties

sometimes included lifting 50- and 100-pound boxes of training materials, books, and weapons.

(R. 56–58.)

The ALJ later explained to Plaintiff that he had the right to object to the VE's

qualifications, but Plaintiff declined. (R. 69.) The ALJ then asked the VE if he could "classify

[Plaintiff's] past work . . . . "; the VE answered in the affirmative. (R. 69.) The VE testified: "Yes,

sir. I really classified it as a Military Science Education and Instruction Instructor: DOT 099.227–

022, sedentary and skilled with an SVP of 9; although performed between medium and heavy as

he performed it." (*Id*.)

At that point, the ALJ allowed Plaintiff to remind the VE that, during the relevant period,

he primarily had managerial as opposed to teaching duties. (R. 70.) The VE stated that he

understood that and had taken it into account as evidenced by the following exchange:

| | |
|---|---|
| [Plaintiff:] | Sir? Sir? |
| ALJ: | Yes? |
| [Plaintiff:] | I don't want to interrupt, but if I understand what he said about that I was military training certified before that period of time that I told you about. I was primarily - - for that period that we were talking about - - and I had been certified as a military instructor in the past, and somewhat, I did have to provide instructional support. But |

> primary during those periods that I gave you that I was at OSI Academy, I was in more of a management team, more of the management aspect of that. And then when I left that and went to headquarters, I was more of the director of the training program. I didn't have to have had [*sic*] to teach when I went to headquarters. So I moved from the technical aspect of providing instruction to the students and support to the students, what was more of a management in the background issue.

ALJ:          Right.

[Plaintiff:]   But I moved over to the director of the whole organization.

ALJ:          And keep in mind that this occupational title probably includes the administration of the courses, as well, and that's probably why he used it. Would you - -

[Plaintiff:]   Oh.

ALJ:          - - agree with me, [VE]?

VE:           Yes, sir. I agree. I understand, sir, everything you said, and I've incorporated that.

[Plaintiff:]   Okay. All right.

(R. 70–71.)

The ALJ then asked the VE if a hypothetical person with the same age, education, and RFC ultimately assessed for Plaintiff could perform Plaintiff's past work. (R. 71.) The VE testified that such a person could perform that past work as it was generally performed although not as Plaintiff had performed it. (R. 71, 69.) The ALJ additionally asked the VE if a hypothetical individual with that same profile plus additional mental health limitations would be able to perform other work that existed in significant numbers in the national economy. (R. 72.) The VE testified that such a person could perform other work such as Inspector,[2] Packager,[3] and Machine

---

[2] DOT 741.687–010.

[3] DOT 559.687–074.

Tender,[4] and that there were 33,000, 20,000, and 40,000 of those other jobs in the national

economy, respectively. (*Id*.)

Finally, the ALJ asked the VE if testimony was consistent with the DOT and its

companion publication, the Selected Characteristics of Occupations. (R. 78.) The VE explained

that his testimony was consistent with both of those publications except when they were silent

about certain issues that the ALJ had asked about—such as off task behavior and absenteeism—

and that for those issues, the VE had relied on his experience in disability management when

testifying. (*Id*.)

## III.    THE ALJ'S DECISION

The ALJ issued the unfavorable determination on December 29, 2021. (R. 17–37.) The

ALJ initially found that Plaintiff's date last insured was December 31, 2010, and thus, Plaintiff

needed to establish disability on or before that date to be awarded DIB. (R. 20–21, 22.) At step

---

[4] DOT 556.685–038.

one of the sequential evaluation process,[5] the ALJ found that Plaintiff had not engaged in substantial gainful activity from October 1, 2005, his alleged date of onset, through December 31, 2010, his date last insured. (R. 22.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spines; osteoarthritis of the bilateral plantar fasciitis; trigger fingers with tendinitis; migraines; lateral epicondylitis; and diverticulitis. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 27.)

Before proceeding to step four, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a), subject to the following limitations: 1) lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; 2)

---

[5] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

standing and/or walking for about four hours and sitting for about 6 hours in an eight hour workday; 3) no climbing ladders ropes and scaffolds; 40 occasional climbing ramps and stairs, stooping, kneeling, crouching, and crawling; 5) frequent balancing; 6) occasional reaching overhead bilaterally; 7) frequent handling and fingering bilaterally; 8) avoid unprotected heights and dangerous machinery.

(R. 28.)

At step four, the ALJ relied on the VE's testimony to find that Plaintiff was able to perform his past relevant work as it was generally performed even though he could no longer perform it as he had done so. (R. 31.) At step five, the ALJ cited the VE's testimony that a person with an even more limited RFC than Plaintiff—one that included all of Plaintiff's limitation plus additional mental health limitations—could perform other work that existed in significant numbers in the national economy. (R. 32.) The ALJ, therefore, alternatively found that Plaintiff could perform other work that existed in significant numbers in the national economy. (*Id*.) As a result, the ALJ concluded that Plaintiff was not disabled from October 1, 2005, his alleged date of onset, through December 31, 2010, his date last insured. (R. 32.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V.        ANALYSIS

As previously explained, Plaintiff argues that the ALJ committed reversible error when relying on the VE's testimony at step four to find that he could perform his past relevant work because the VE mischaracterized it. (Pl.'s Statement of Errors 5–7, ECF No. 10.) Plaintiff's contention of error lacks merit.

### A.        Step Four

At step four, a claimant bears the burden of establishing that he is unable to perform his past relevant work given his RFC. 20 C.F.R. § 404.1520(a)(4)(iv); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (explaining that "the burden of proof lies with the claimant at steps one through four of the process, culminating with a claimant's proof that [he] cannot perform [his] past relevant work."). Past relevant work is "work that [a claimant] ha[s] done

within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1).

When evaluating whether a claimant can perform his past relevant work, an ALJ: (1) will ask the claimant for information about his past work (duties, requirements, etc.); and (2) may consult other sources, such as VE testimony or the DOT. 20 C.F.R. § 404.1560(b)(2); *see also* SSR 00–4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("We may also use VEs and VSs at these steps to resolve complex vocational issues."). "Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." SSR 00–4p, 2000 WL 1898704, at *2. Therefore, if a VE testifies, an ALJ must ask if the VE's testimony is consistent with the DOT, and if the VE indicates that it is not, the ALJ must ask him to explain that conflict. *Id*. at *4. An ALJ must also explain how he resolved such a conflict. *Id*. On the other hand, if a VE testifies that there is no conflict, an ALJ has satisfied his duty under SSR 00–4p. *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 468 (6th Cir. 2017); *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 858 (6th Cir. 2010). Stated differently, an ALJ is not required "to conduct an independent investigation into the testimony of [a VE] to determine if [he or she is] correct." *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) (noting that it was the claimant's burden, through counsel, to present to the ALJ any argument that the VE's testimony was inconsistent with the DOT).

Here, the VE classified Plaintiff's past relevant work as Military Science Education Instructor—a civilian position described in the DOT. (R. 69.) Plaintiff appears to make two arguments about why this classification was wrong: the first relies on additional evidence that was not available to the ALJ; the second attacks the VE's understanding of Plaintiff's job duties. Neither argument warrants remand.

1.      **Additional Evidence and Sentence-Six Remand**

Plaintiff notes that his Air Force Specialty Code was T3S271.[6] He then points to a

Verification of Military Experience and Training form ("VMET") that lists "related civilian

occupations" for T3S271. (ECF No. 9–2, PageID # 14933.) That list does not include Military

Science Education Instructor. (*Id.*) Accordingly, Plaintiff appears to reason, the VE was wrong to

have identified Military Science Education Instructor as representative of his past relevant work,

and therefore, remand is warranted because the ALJ could not rely on that VE testimony. (Pl.'s

Statement of Errors 6, ECF No. 10.)

The Court is not persuaded. It was Plaintiff's burden at step four to demonstrate that he

could not perform his past work. *Her*, 203 F.3d at 391. But Plaintiff failed to submit the VMET

until February 8, 2022, which was 41 days after the ALJ issued his unfavorable determination.

(ECF No. 9–2; R. 2.) After Plaintiff finally submitted the VMET, the Appeals Council declined to

exhibit it because it would not have changed the ALJ's unfavorable determination. (R. 2.) The

Sixth Circuit Court of Appeals has explained that in such circumstances, "where the Appeals

Council considers new evidence but declines to review a claimant's application for disability

insurance benefits on the merits, [a] district court cannot consider that new evidence in deciding

whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d

146, 148 (6th Cir. 1996). Instead, a district court can only consider such evidence as a basis to

remand pursuant to the sixth sentence of 42 U.S.C. § 405(g), which allows a district court to

remand in light of additional evidence without making a substantive ruling as to the correctness of

the Commissioner's disability determination. *Id.*

---

[6] Air Force Specialty Code T3S271, Master Sergeant with a specialty in Education and Training.
(Pl.'s Statement of Errors 5, ECF No. 10.)

"Sentence-six remands may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) (citations omitted). The requirements that evidence be "new" and "material," and that "good cause" must be shown for failing to present it to an ALJ has been defined by the Sixth Circuit as follows:

> For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' . . . Such evidence is 'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.' . . . A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ . . . . [T]he burden of showing that a remand is appropriate is on the claimant.

*Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

Plaintiff has failed, however, to expressly seek a sentence-six remand from this Court. Thus, the Commissioner contends, Plaintiff has waived this basis for remand. (Def.'s Mem. in Opp'n, 9–10, ECF No. 11.) Moreover, the Commissioner contends, even if Plaintiff had not forfeited a sentence-six remand, he cannot show that such a remand is warranted. (*Id.*) The Court agrees with the latter proposition.

First, Plaintiff cannot show that the information in the VMET was new—*i.e.*, that the information was not in existence or available before the ALJ issued his December 29, 2021 determination. Although it is unclear when these particular documents were created, Plaintiff's military service ended in 2005. (R. 55.) The record fails to demonstrate that this information about his job duties did not exist or was unavailable prior to the ALJ's December 29, 2021

determination. The record is also bereft of anything showing that Plaintiff had good cause for failing to provide this information until 41 days after the ALJ issued his determination.

Equally fatal is Plaintiff's inability to show that the VMET was material—*i.e.*, that there was a reasonable probability that a different disability conclusion would have been reached had he submitted the VMET to the ALJ. The VMET states that the document is "for your personal use only" to "prepare resumes and job applications" or to "support proof of having met training and/or course requirements to qualify for civilian occupations, certificates, licenses, or programs of study." (ECF No. 9–2, PageID #14929.) But it is notably "not a statement of service and it does not mirror . . . official military personnel record." (*Id.*) Rather, it represents "a 'snapshot' of information contained in the personnel data systems . . . combined with historical information" extracted from other databases. (*Id.*) Accordingly, it is not clear that the information in the VMET, including the list of related civilian occupations for T3S271, is an official description of Plaintiff's job duties, or that it includes an authoritative and exhaustive list of "related civilian occupations" such that the omission of Military Science Education Instructor from that list conclusively demonstrates that it is not a related civilian position or that it could not be representative of Plaintiff's past work.

In sum, Plaintiff has failed to demonstrate that the VMET is new and material, or that he had good reasons for failing to submit it prior to the ALJ's determination. Consequently, the Court concludes that no sentence-six remand is warranted.

## 2. The VE's Understanding of Plaintiff's Job Duties

Plaintiff relatedly argues that the ALJ erred when relying on the VE's testimony because the VE wrongly categorized his past work given that it primarily involved training and managing instructors instead of teaching. (Pl.'s Statement of Errors 6, ECF No. 10.) In support, he points

out that the VE testified: "I have no idea what any of these jobs mean, what [Plaintiff] did. And sometimes it's very hard to translate military jobs into civilian type DOTs." (Pl.'s Statement of Errors 6–7, ECF No. 10 (quoting R. 55).)

This argument lacks merit. Although a claimant bears the burden of proving that he cannot perform his past work at step four, "the ALJ has a duty to make adequate findings on the record that 'clearly and explicitly' resolve the issue of a claimant's relevant job duties." *Lamorgese v. Comm'r of Soc. Sec.*, No.1:14CV11–4, 2015 WL 3894282, at *3 (N.D. Ohio June 24, 2015) (quoting SSR 82–62, 1982 WL 31386 (Jan. 1, 1982)). The ALJ satisfied that duty in this case. After the VE stated that he did not know what Plaintiff did at his military jobs and that Plaintiff would need to "flush out" each of his positions, the ALJ asked Plaintiff to "elaborate" about his positions. (R. 55.) Plaintiff then testified that he did "a small amount of teaching" but that he was primarily a director and manager of instructors and programs. (R. 56.) When the VE subsequently testified that he could classify Plaintiff's past relevant work as Military Science Education Instructor, the ALJ allowed Plaintiff to remind the VE that his duties primarily involved managing instead of teaching. (R. 70.) The VE then testified that he "understood" that information and had incorporated it into his classification of Plaintiff's past work. (R. 70–71.) Plaintiff immediately stated: "Okay." (R. 71.)

The Court, therefore, finds that the ALJ complied with 20 C.F.R. § 404.1560(b) by: 1) specifically asking Plaintiff about his past work during the relevant time frame; 2) asking Plaintiff to provide additional details when the VE indicated that he needed them; 3) asking the VE if he could classify Plaintiff's past work; and 4) asking the VE if a hypothetical person with Plaintiff's age, experience, and RFC could perform Plaintiff's past relevant work. (R. 52–55, 55, 69, 71.)

14

The ALJ also complied with SSR 00–4p when he asked the VE if his testimony was consistent with the DOT, and the VE testified that it was except where the DOT was silent about issues that were unrelated to Plaintiff's past work classification. (R. 78.) At that point, the ALJ had discharged his duty to independently investigate any conflicts between the VE's testimony and the DOT; it was incumbent upon Plaintiff to ask additional questions. And indeed, Plaintiff did so. He asked if his ability to fire people by having them relocated to other positions had been considered. (R. 79–80.) The ALJ indicated that this would be noted, but given his advanced skill level, any additional supervisory component might not have much impact. (*Id.*) Plaintiff did not, however, revisit earlier discussions about his having had managerial rather than teaching duties— an issue about which the VE had already testified that he "understood" and "incorporated." (R. 70–71.) For these reasons, the Court finds no reversible error at step four. *See King v. Saul*, No. 5:18CV1283, 2020 WL 1025170 at *15–16 (N.D. Ohio Mar. 3, 2020) (finding ALJ could rely on VE's testimony after VE indicated that there were no conflicts between his testimony and the DOT and the *pro se* claimant was given the opportunity to cross-examine the VE), *aff'd sub nom.*, *King v. Comm'r of Soc. Sec.*, No. 20–3276, 2020 WL 8772400, (6th Cir. Nov. 25, 2020).

## B.    Step Five

In any event, the Commissioner contends, any error at step four was harmless because the ALJ alternatively found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy. (Def.'s Mem. in Opp'n, 12–13, ECF No. 11.) The Court agrees.

At step five, an ALJ must consider a claimant's RFC, age, education, and work experience to see if the claimant "can make an adjustment to other work." 20 C.F.R. § 405.152(a)(4)(v). If a claimant can do so, then the Commissioner "will find that [the claimant] is not disabled." *Id.* If,

however, the claimant "cannot make an adjustment to other work," the Commissioner will find that the claimant *is* disabled. *Id.* The "other work" to which a claimant must be able to adjust "must exist in significant numbers in the national economy"—*i.e.*, "in the region where [the claimant] lives or in several regions in the country." *Id.* § 404.1560(c)(1). The burden for establishing that "other work" exists in significant numbers in the national economy rests with the Commissioner, not the claimant.  *Id.* § 404.1560(c)(2).

To meet that burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id.* If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *See Ealy v. Comm'r of Soc. Sec*, 594 F.3d 504, 516-17 (6th Cir. 2010). But an ALJ does not commit reversible error by relying on VE testimony elicited in response to an inaccurate hypothetical if the inaccuracies portrayed a hypothetical person with a more restrictive RFC than the one ultimately assessed for the claimant. *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 844-845 (6th Cir. 2005) (holding that any error that arose from an ALJ's reliance on a VE's testimony in response to an inaccurate hypothetical question was harmless because the hypothetical question included a more restrictive RFC than the one that the ALJ assessed for the plaintiff).

At the hearing, the ALJ asked the VE if a hypothetical individual with the same age, education, and the same exertional limitations that were incorporated into Plaintiff's RFC, plus non-exertional limitations that were not incorporated, could perform other work that existed in

16

significant numbers in the national economy. (R. 72.) The VE testified that such a person could perform other work such as Inspector, Packager, and Machine Tender, and that there were 33,000, 20,000, and 40,000 of those other jobs in the national economy, respectively. (*Id*.) In the December 29, 2021 determination, the ALJ explained that the VE had testified that a person with this "alternative functional capacity" could perform these jobs that existed in these numbers, and thus, he found that Plaintiff, who had a less restrictive RFC, was able to perform such work. (R. 32.) Given this step-five determination, any error regarding Plaintiff's past relevant work at step four is harmless. *See Castro v. Kijakazi*, No. 3:20-cv-02259, 2022 WL 889378, *10 (N.D. Ohio March 25, 2022) (quoting *Michael v. Comm'r of Soc. Sec*., No. 2:18-cv-131, 2018 WL 349082, at *6 (S.D. Ohio July 20, 2018) ("It is thus well-established that if an ALJ makes additional findings at step five that are supported by substantial evidence, any error at step four is harmless.")).

In his Reply, Plaintiff appears to argue that the ALJ's hypothetical questions to the VE at step five were unclear, thus lulling him into thinking that he did not need to cross-examine the VE further. (Pl.'s Reply 1–2, ECF No. 12.) Specifically, Plaintiff asserts that the ALJ summarized the VE's testimony in a way that made Plaintiff, who was *pro se*, believe that the ALJ was going to incorporate additional, work preclusive, limits into his RFC. (*Id*.) As evidence, Plaintiff notes that after the ALJ explained the VE's testimony to him, he asked a question about the jobs that the VE had identified and stated: "the only reason I ask is that it's hard to get what you were discussing." (*Id*. (quoting R. 77).)

The Court does not agree. After the VE testified, the ALJ explained what the VE's testimony meant and asked Plaintiff if he had any questions. (R. 74–76.) The following exchange took place:

ALJ:  . . . . Now, [Plaintiff], let me explain a little bit about what [the VE} and I talked about.

Plaintiff:      All right.

                . . . .

ALJ:            So what the agency does is we create a hypothetical individual. Okay? A hypothetical individual closely mirrors your education; your age; your work history; your background, basically; and your medical limitations, and we create what we call a Residual Functional Capacity. A Residual Functional Capacity is the most that we believe you can do based on testimony and medial evidence. So what we started with what we call a light exertional Residual Functional Capacity where we limited your ability to stand and walk from six hours to four hours, based on your low back, your knee issues, your ankles, and your feet, as well as toes. Then we limited in terms of what we call posturals, which is the climbing ramps and stairs, stoop, kneel, crouch, and crawl, as well as balance. If you're having problems with your feet, you're probably having problems with your balance. So then we also - -

Plaintiff:      Yes.

ALJ:            So I also looked at the - - your rotator cuff issues, and so we limited to occasionally reach overhead. And then with your finger issues, with your fingers locking up, we limited to frequent handle and finger, bilaterally. Now, keep in mind that frequent is a term that we use for an individual to be able to use two-thirds of the work day. Occasional is only a third of the work day. That's not a third of the work day straight through. That is just a total of an eight-hour work day, a third of the eight hours. Okay?

Plaintiff:      Okay.

ALJ:            Now, as [the VE] testified that, basically, with this initial Residual Functional Capacity you could still perform that DOT job, but only as it's defined by the DOT, and not as you performed it, mainly because of the lifting that you had to do was definitely more than 20 pounds.

                So then, based on your testimony regarding your anxiety and your depression that you were dealing with, I added some limitations that are connected to mental health symptoms. So we talked about your inability to focus and concentrate, so I limited it to simple, routine tasks; as well as a combination of the pain issues; as well as the focus issues I limited the - - to nothing involving production rate pace or performance quotas where you have to, like, be in a hurry to make

sure you achieve certain goals. If you're having anxiety symptoms, you don't want to be placed in a anxious situation. We also - - I also limited the interaction, based on your depression symptoms. You said you did frequently isolate yourself, so I limited the interaction with other individuals as well as I limited the changes in work. So there would be no jobs that you would be responsible for, like, a variety of different duties. It would just be one to two duties per week. As he testified, he did say that there were some jobs out there that that met those criteria.

Then we limited them more. Based on your IBS and some of your other symptoms, I limited and created the need for additional breaks. As he testified, those would be work preclusive. We also looked at being off-task. Off-task can be anything caused by chronic pain, it can be caused by mental health symptoms where you're just not focused doing the tasks or your duties at hand. And as he testified, 15% off-task is above the tolerance of most employers would allow. Then we also looked at absenteeism, combination of symptoms would cause absenteeism. And as he testified, three days per month would be work preclusive. And tolerances normally in the competitive market, one day missed per month before it becomes work preclusive.

Do you have any questions for me based on my conversations with [the VE]?

(R. 73–76.)

Plaintiff then asked questions about two of the jobs that the VE had identified as ones that could be performed by a hypothetical person with a more restrictive RFC than the one ultimately assessed for him, including the job of Inspector. (R. 76–78.) After those questions were answered, Plaintiff explained that he had sought clarification about the Inspector position because he had been trained to do housing inspection work while in the service. (R. 77.) But he did not indicate that he remained unclear about the Inspector job, as evidenced by the following exchange:

| Plaintiff: | You said something about - - [the VE] said something about an Inspector type job. |
|---|---|
| ALJ: | Yes. |

Plaintiff:      What is that type of inspector?

VE:             Well, again, there are many of those in industries inspecting parts for defects. Let's say you're working at a company that makes glasswear [*sic*], and they bring you a box of glasses. And your job is to look at each glass and make sure that it's up to specifications, it's not broken, it's not deformed, it doesn't have any kind of impropriety in it. And if any of those things are defective, you take them out of the box or whatever, you move them aside. And there's many jobs - -

Plaintiff:      Okay.

VE:             - - similar to that in industries.

ALJ:            Basically, quality assurance type jobs.

Plaintiff:      Okay. *And the only reason why I ask that is it's hard to get what you were discussing*. At one time, when I was stationed in Germany, I was a - - you know, the military, they give you additional skills, training with things outside your job. I was a home inspector for people deploying back to the States. I had to inspect their household goods type inspector. So I was just trying to define that a little bit.

ALJ:            Okay. It's completely different.

VE:             Well, let me say all of the jobs that I'd given are what we call unskilled, which really basically don't require any particular skills. They can be learned either by demonstration, usually within 30 days of getting on the job.

Plaintiff:      Oh, okay.

VE:             That's the definition of unskilled within our venue.

Plaintiff:      Okay.

ALJ:            Any other questions, [Plaintiff]?

Plaintiff:      None that I have at this point.

(R. 76–78.) (emphasis added.) The most natural reading of Plaintiff's testimony about it being "hard to get at" what the ALJ and VE "discussed," was that he wanted to explain that he had

asked about the Inspector position because of his past training, not that he was unclear about the limitations that would ultimately be included in his RFC.

Moreover, although Plaintiff now represents that the ALJ misled him into believing that the ALJ planned to add work preclusive limitations to his RFC, the ALJ explained that he still needed to review evidence, compare it to the various hypotheticals that had been posed to the VE, and see how that "matched." (R. 78–79.) The ALJ explained as follows:

ALJ:        Thank you, sir. Okay. [Plaintiff], so this pretty much concludes the hearing. So what I do now, okay, first of all, we're going to get all of the additional medical evidence in the file. But then what I do is go through your testimony, I go through the medical evidence again, and then I place - - in terms of the Residual Functional Capacities that I proposed to our vocational expert, I see where you match. And then that's how I render my decision . . . .

(R. 78–79.) After the ALJ offered this explanation, Plaintiff was given an opportunity to ask additional questions. (*Id.*) But Plaintiff did not ask about, or indicate, that he believed that the ALJ planned to incorporate work-preclusive limits into his RFC.

Plaintiff also argues in his Reply that the ALJ violated his special duty to develop the record due to Plaintiff's *pro se* status, but nothing in the transcript indicates that this was the case. Indeed, Plaintiff's questions at the hearing, which lasted one hour and seven minutes, demonstrated that he generally understood the process and knew that the ALJ's decision was not final. *See Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563–64 (6th Cir. 2022) (finding ALJ had no special duty to develop the record by questioning VE about basis for his testimony where there was no indication that *pro se* claimant failed to understand hearing procedures); *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) (finding ALJ had no special duty to

21

develop the record where *pro se* claimant chose to proceed without counsel and the hearing transcript disclosed her grasp of the proceedings). Plaintiff's assertion to the contrary lacks merit.

## VI. CONCLUSION

In sum, the Court finds that a sentence-six remand is not warranted. The Court further finds that the ALJ did not commit reversible error when relying on the VE's testimony to find that Plaintiff could perform his past work, and that even if the ALJ had erred at step four, any error was harmless in light of the ALJ's step-five determination. Therefore, the Court **AFFIRMS** the Commissioner's non-disability determination and **OVERRULES** Plaintiff's Statement of Errors.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE